Daniel ELLSBERG, et al., Plaintiffs,

v.

John N. MITCHELL, Defendant.

Civ. A. No. 1879–72.

United States District Court,
District of Columbia.

June 20, 1984.

David Rein, Ann M. Garfinkle, Alan Dranitzke, Washington, D.C., for plaintiffs.

Larry L. Gregg, W. Philip Jones, R. Joseph Sher, Edward S. Christenburg, Benjamin C. Flannagan, Dept. of Justice, Washington, D.C., for Mitchell.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This protracted litigation, which began nearly 12 years ago with nineteen plaintiffs and ten named defendants, has by now dwindled considerably in size and scope. Much of the case was resolved when all plaintiffs except Russo, Young, and Ellsberg dropped certain claims against the defendants through a stipulation entered into on November 23, 1982. Moreover, the granting of successive motions for partial summary judgment eventually left John Mitchell as the sole defendant. The first motion, granted on May 28, 1982, dismissed all claims against defendants Walters, Ingersoll, Acree, Kleindienst and Gray. The

second, which we granted on December 22, 1982, dismissed all claims against defendants Rowley, Rogers, Laird, and Helms. Later, on December 23, 1982 and July 27, 1983 respectively, we granted summary judgment for defendant Mitchell against plaintiffs Russo and Young.

The only claims unaffected by the foregoing events, and before us at this time, are Ellsberg's claim for being overheard on a wiretap of Morton Halperin, and the claims of five plaintiffs resulting from overhearings on foreign security surveillances of others. The latter claims were recently remanded to us from the Court of Appeals, where they had been appealed following their adjudication purusant to Fed.R.Civ.P. 54(b).[1] Defendant Mitchell has now moved for summary judgment as to the Ellsberg claim and the claims remanded by the Court of Appeals. Having reviewed defendant's motion, plaintiffs' opposition, defendant's reply, relevant materials *in camera*, and the entire record herein, we enter final judgment for defendant as to all remaining claims.

## DISCUSSION

### I. *Ellsberg's Claim*

■ Plaintiff Ellsberg has sought damages from defendant Mitchell for overhears resulting from wiretapping connected with national security electronic surveillance of Morton Halperin. On January 31, 1983, we stayed proceedings in the portion of this case dealing with plaintiff Ellsberg, on plaintiff's representation that he would agree

> to be bound by the determination made in the *Halperin* litigation regarding Mitchell's liability. If the court there finds Mitchell immune or facts which otherwise result in absence of liability when applied to the Ellsberg overhears, plaintiff will accept the result.

Plaintiff's Memo. re: Motion for Reconsideration, December 30, 1982 at 3. In accordance with this acknowledgement that the case of *Morton Halperin, et al. v. Henry A. Kissinger*, et al., Civ. Action No. 1187–73 (D.D.C.), "will control the determination of Ellsberg's claims," Plaintiff's Memo. at 3, plaintiff promised to file a stipulation agreeing to be bound by the result in Halperin. *Id.* Although plaintiff never filed that stipulation, plaintiff's promise was and is binding in light of the court's reliance on it in granting plaintiff's motion to reconsider the court's earlier denial of a stay of proceedings. Consequently, the court's granting of summary judgment for defendant on January 13, 1984 in *Halperin v. Kissinger*, 578 F.Supp. 231 (D.D.C. 1984)[2] is dispositive of plaintiff Ellsberg's claims and we enter final judgment for defendant Mitchell.[3]

1. In its remand, the Court of Appeals conceded the validity of the government's state secrets privilege claim "for the most part," but held that this court had "improperly upheld the government's refusal to disclose the identities of the Attorneys General who authorized the wiretaps." *Ellsberg v. Mitchell*, 709 F.2d 51, 59–60 (D.C.Cir.1983). The government remedied this deficiency when in its petition for rehearing it advised that the surveillances were authorized by Attorneys General Ramsey Clark and John N. Mitchell and Acting Attorney General Harold Tyler.

2. The court in *Halperin* found that defendant was entitled to qualified immunity under the standards set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Zweibon v. Mitchell*, 720 F.2d 162 (D.C.Cir. 1983) (*Zweibon IV*), since there was a "rational national security concern" for the surveillance and an absence of "any clearly established warrant or reasonableness requirements" at the time of the Halperin overhears.

3. Although plaintiff would have us stay our determination in this case pending appeal in the *Halperin* case—proceedings which could go on for years—we decline to do so, since plaintiff can easily reopen this matter within a reasonable time if the *Halperin* case is remanded for whatever reason as to defendant Mitchell. We also note that while defendant Ellsberg's promise to be bound by the result in *Halperin* constitutes sufficient grounds on which to make our determination, we agree with defendant that there is yet another basis on which to enter judgment for defendant Mitchell. Specifically, the finding in *Zweibon v. Mitchell*, 720 F.2d 162 (D.C.Cir.1983) (*Zweibon IV*) that the defendant Mitchell could not be liable for the continuation of surveillances after they were supposed to have been terminated pursuant to internal guidelines, *id.*, at 173 n. 18, applies with equal force to the analogous circumstances in the instant case.

## II. *Claims remanded by the Court of Appeals*

The other claims before us have been remanded by the Court of Appeals following its decision on May 10, 1983 in *Ellsberg v. Mitchell*, 709 F.2d 51 (D.C.Cir. 1983). These claims relate to foreign intelligence surveillance conducted by the Federal Bureau of Investigation, as well as other foreign intelligence surveillance contained in records of the Central Intelligence Agency and the Department of Defense. We found defendants' invocation of the state secrets privilege as to those claims justified, and certified our decision as final pursuant to Fed.R.Civ.P. 54(b). The Court of Appeals upheld our determination that the state secrets privilege was properly invoked, 709 F.2d at 59, but remanded the case to permit plaintiffs to make out a *prima facie* case of Fourth Amendment violation, subject to a qualified immunity defense.[4] *Id.*, at 69–70.

The foreign intelligence surveillance claims—those of plaintiffs Robert Scheer, Leonard Boudin, Daniel Ellsberg, Stanley Sheinbaum and Richard Falk[5]—must be governed by a determination of whether defendants are entitled to qualified immunity as a matter of law. While the Court of Appeals remanded the case to afford plaintiffs the opportunity to make out a *prima facie* case, it also recognized that defendant could defend, as a matter of law, on immunity grounds. 709 F.2d at 69–70. Since the qualified immunity issue necessarily impinges on privileged state secrets, the Court of Appeals observed that the limited factual questions involved "could be resolved by the trial judge through use of appropriate *in camera* procedures."[6]

Application of the qualified immunity doctrine to warrantless national security surveillance actions has become much clearer as a result of recent decisions by this Circuit which have elaborated on the Supreme Court's new qualified immunity test enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Harlow* disposed of the "subjective" aspect of qualified immunity and held that courts should examine only the "objective reasonableness of an official's conduct, as measured by reference to 'clearly established' law." *Id.*, at 818, 102 S.Ct. at 2738. As the Court of Appeals in the instant case interpreted this analysis, "once an official's conduct has been ascertained, the determinative question will be what rules were

---

**4.** As to the assertion of privilege, however, the court found that we should have required defendants to identify the Attorneys General who had authorized the surveillances in question. While the court remanded as to that issue, 709 F.2d at 60, defendants revealed that information in their Motion for Rehearing.

**5.** We fail to see how, in defendant's view, only the claims of plaintiffs Boudin and Scheer are before us on remand. We do not read the Court of Appeals opinion to suggest that all matters covered by the Director of Central Intelligence's and Secretary of Defense's claim of privilege—including the claims of plaintiffs Sheinbaum, Falk, and Ellsberg—are deemed absolutely privileged and not entitled to reconsideration on remand, subject to defendant's qualified immunity defense. While it may be true that only plaintiffs Boudin and Scheer were directly overheard on foreign intelligence surveillance, while the other plaintiffs seek damages for "information on plaintiffs" obtained "through foreign intelligence electronic surveillance," we can find no evidence in the Court of Appeals opinion for defendant's assertion that information relating to the latter claims are "completely protected from disclosure," Def. Memo. at 9 n. 10, or that

such claims should be treated any differently from those of plaintiffs Boudin and Scheer on remand.

We note in this regard that simply because Boudin's and Scheer's claims relate to direct overhears—and only the affidavits of Kleindienst and Bell, which expressly pertain to such overhears, were criticized by the Court of Appeals for omitting the names of the authorizing Attorneys General—does not mean that the claims of the other plaintiffs were not equally disadvantaged by such omission.

While we thus confirm that the claims of Ellsberg, Sheinbaum and Falk are now before us on remand, we believe that they, as well as the claims of Scheer and Boudin, will be validly subject to defendant's qualified immunity defense. Thus, the addition of these claims for our consideration poses no procedural or substantive burden on the court or the parties.

**6.** Although the Court of Appeals stated that "*in camera* resolution of dispositive issues should be avoided wherever possible," 709 F.2d at 69 n. 78, we cannot make a public record finding here since all facts relevant to the surveillances in question have been deemed privileged state secrets in the interest of national security.

clearly established at the time he acted." 709 F.2d at 69. The court in *Zweibon v. Mitchell*, 720 F.2d 162 (D.C.Cir.1983) (*Zweibon IV*) stated even more starkly that under *Harlow*, "if the law was not clearly established at the time the contested conduct occurred, the inquiry ceases. At that point the official is entitled to summary judgment as a matter of law...." *Id.*, at 168.

▮ It is plain from the holding in *Zweibon IV* that no clearly established warrant or reasonableness requirements existed at the time of the surveillance at issue in this case.[7] *Id.*, at 170. *See also Chagnon v. Bell*, 642 F.2d 1248, 1256–63 (D.C.Cir.1980); *Sinclair v. Kleindienst*, 645 F.2d 1080, 1084–85 (D.C.Cir.1981). It is equally plain, after the holding in *Zweibon IV*, that defendant can invoke the doctrine of qualified immunity regardless of whether the privileged surveillances were "foreign" or "domestic," so long as those taps bear some rational relationship to the area of foreign affairs. 720 F.2d at 169–70. Finally, with regard both to the objective "conduct" referred to in the *Harlow* test, and to the possibility of "improper purposes" having animated the surveillances, we concur with the court in *Smith v. Nixon*, 582 F.Supp. 709 (D.D.C.1984) (Smith, J.), that "if the documentary record of the surveillance establishes a basis for rational national security concerns on the part of the defendant officials, then the tap may be characterized as a 'national security tap,' and the inquiry as to conduct is complete." *Id.*, at 715.

We have, for a second time, examined all the exhibits submitted to us for *in camera* inspection, and conclude that in addition to

giving support to the privilege of state secrets they manifestly evince rational national security considerations. These submissions do not suggest that the taps generally, or with respect to plaintiffs individually, served as a pretext for politically or prosecutorially motivated surveillance. *See Chagnon* at 1260–61; *Halperin v. Kissinger*, 606 F.2d 1192, 1204–05 (D.C.Cir. 1979). Moreover, while some of the taps at issue implicated "domestic" targets like the plaintiffs,[8] there is little doubt, following the holding in *Zweibon IV*, 720 F.2d at 169–70, that the documentation here of activities involving the foreign affairs of the United States brings these warrantless taps within the "foreign agent exception" to the warrant requirement of the Fourth Amendment. Admittedly this is an area clouded with uncertainty. Nevertheless, since no clearly established warrant or reasonableness requirements existed at the time of the surveillances under consideration here, *Zweibon IV* at 170, defendant Mitchell is shielded from liability by qualified immunity as set forth in *Harlow* and refined in *Zweibon IV*. We accordingly enter final judgment for defendant Mitchell.[9]

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of defendant Mitchell's motion for summary judgment, plaintiffs' opposition, defendant's reply, relevant *in camera* material and the entire record herein, it is by the court this 20th day of June, 1984,

---

7. *Zweibon IV* also found that there was no clearly established minimization requirements at the time of the taps in question, thereby mooting any potential claims advanced on that basis.

8. It should be noted, however, that neither plaintiffs, nor any premises in which they had an interest, constituted targets of the surveillances. Bell Aff. ¶ 2, May 8, 1973, *reprinted in* Jt. App. 29.

9. Aside from the fact that plaintiffs do not accompany their opposition with an affidavit attesting to a need for further discovery, Fed.R. Civ.P. 56(f), plaintiffs have similarly failed to

raise any genuine issues by specifically controverting defendant's statement of material facts not in dispute. Other than stating that they "do not concede the facts allegedly encompassed by the *in camera* submissions," plaintiffs only point of contention revolves around whether plaintiffs were "agents of or collaborators with a foreign power." Pl. Statement of Genuine Issues at 2. But, as we noted above, such description has been held to extend to individuals whose activities implicate the foreign affairs of this country. *Zweibon IV* at 170.

ORDERED that defendant Mitchell's motion for summary judgment be and the same hereby is granted, and it is

ORDERED that judgment is entered for defendant Mitchell as to the claim of plaintiff Ellsberg concerning overhears on the surveillance of Morton Halperin, and it is

ORDERED that judgment is entered for defendant Mitchell as to the formal claims of state secrets privilege by the Attorney General, the Director of Central Intelligence, and the Secretary of Defense, and it is

FURTHER ORDERED that this action is dismissed.