**Katherine W. BURKHART, et al.**

**v.**

**William SAXBE, et al.**

**Civ. A. No. 74-826.**

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1984.

David Rudovsky, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiffs.

Gordon W. Daiger, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

OPINION AND ORDER

VANARTSDALEN, District Judge.

The primary issue before the court is whether John N. Mitchell is liable in damages to persons whose conversations were overheard during non-consensual telephone wiretaps that were authorized by him as

"national security" surveillances in his capacity as Attorney General of the United States. The parties have filed cross motions for summary judgment and agree that there are no genuine issues of material fact in dispute.

The two wiretaps in question, one on the telephone of William Davidon, the other on the telephone of the Black Panther Party, were authorized, installed, implemented and terminated more than a year prior to the decision in *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (hereafter referred to as *"Keith"*). By the time *Keith* was decided on June 19, 1972, the wiretaps at issue had long since been terminated (at least as of February 10, 1971). In *Keith*, the Supreme Court held for the first time that a wiretap surveillance, even when authorized by the Attorney General for "domestic national security purposes," required the issuance of a judicial warrant before installation of the wiretap.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted), the Supreme Court announced a rule of law that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court further stated:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* (footnotes omitted).

In *Forsyth v. Kleindienst*, 729 F.2d 267 (3d Cir.1984) (*Forsyth II*), Circuit Judge Weis, in dissent,[1] opined that former Attorney General John N. Mitchell was entitled, at least, to the type of "qualified immunity" described in *Harlow*, and on the basis of the record, entitled to summary judgment in his favor.[2] Primarily for the reasons so clearly set forth by Judge Weis in *Forsyth II*, I conclude, on the basis of the record established in this case that the defendant, John N. Mitchell, is entitled to qualified immunity and that summary judgment should be entered in his favor.[3]

This case and the *Forsyth* case have been the subject of several published opinions in both the district court and the court of appeals. *See Burkhart v. Saxbe*, 448 F.Supp. 588 (E.D.Pa.1978), *aff'd in part and remanded sub nom. Forsyth v. Klein-*

---

1. Although I may not adopt a dissenting opinion of the Court of Appeals for the Third Circuit in preference to a majority opinion, in *Forsyth II,* the majority opinion did not address the substantive issue of qualified immunity. The majority of the panel concluded that the question was not properly before the court because the district court had not entered a final judgment as to damages.

2. The wiretap in *Forsyth II* involved a wiretap on the telephone at the residence of William Davidon. This same wiretap is one of the two wiretaps at issue here. Thus, if the Attorney General is immune in *Forsyth II* under the *Harlow* doctrine, he necessarily is likewise immune in the present action for all telephone conversations overheard on the Davidon wiretap.

3. Clarence Kelley and William Saxbe are the only other identified defendants. The record fails to show that they were in any way involved in authorizing, installing, monitoring or otherwise conducting or supervising the wiretaps. I previously so ruled, but judgment was never formally entered in their favor. *See Burkhart v. Saxbe*, 448 F.Supp. 588, 607 (E.D.Pa.1978), *aff'd in part and remanded sub nom. Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Consequently, summary judgment will be entered in favor of all defendants and against all plaintiffs.

*dienst*, 599 F.2d 1203 (3d Cir.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981) (*Forsyth I*); *Forsyth v. Kleindienst*, 447 F.Supp. 192 (E.D.Pa. 1978), *aff'd in part and remanded*, 599 F.2d 1203 (3d Cir.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981) (also cited as *Forsyth I* because the court of appeals decided both cases in a single opinion); *Forsyth v. Kleindienst*, 551 F.Supp. 1247 (E.D.Pa.1982), *stay granted*, 700 F.2d 104 (3d Cir.1983), *aff'd in part, dismissed in part, petition for mandamus denied*, 729 F.2d 267 (3d Cir. 1984) (*Forsyth II*). Consequently, only a few essential facts need be reiterated.

I initially ruled that a full evidentiary hearing was required to determine

> (1) whether the wiretaps in question were conducted for national security purposes or solely for the purpose of investigating criminal or political activity; (2) whether, even if conducted for national security purposes, the defendants are immune from any liability for their failure to secure a warrant in compliance with the fourth amendment and (3) whether, in any event, this surveillance was conducted in a reasonable manner under the fourth amendment as interpreted in *Berger v. New York*, [388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040] *supra*.

*Burkhart*, 448 F.Supp. at 610. The court of appeals' decision directly addressed only the issue of absolute immunity: "We hold that the Attorney General will be absolutely immune from suit for his decision to authorize the warrantless electronic suirveillances only if his decision was made in performance of a function that is intimately related to the judicial process." *Forsyth I*, 599 F.2d at 1217.

In *Forsyth II*, the court of appeals ruled that the former Attorney General had not established a right to absolute immunity as

to the Davidon wiretap, under its formulation set forth in *Forsyth I*; namely, he had not proved that the wiretap was for "a function that is intimately related to the judicial process." *See Forsyth I*, 599 F.2d at 1217. Although theoretically in the *Burkhart* case there could be different evidence as to the purpose of the Davidon wiretap, it would be a strange result to find absolute immunity in *Burkhart* and not in *Forsyth* where the overheard conversations for which damages are sought arose out of the same wiretap authorization on the telephone of William Davidon. In any event, to the extent the issue of absolute immunity may still be open, under the *Forsyth I* test, there is clearly no absolute immunity. The former Attorney General has always taken the position that both the Davidon and Black Panther Party wiretaps were for "national security" and not for criminal investigative purposes.[4] Because I conclude that the former Attorney General is entitled to qualified immunity as a complete defense to this action, it becomes, in any event, unnecessary to decide the issue of absolute immunity.

■ On the present motion for summary judgment, defendant John N. Mitchell relies solely on the contention that under *Harlow* he has established all that is necessary to come within the protection of a qualified immunity. I fully agree. In *Harlow* the Supreme Court held:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818, 102 S.Ct. at 2738 (citations and footnote omitted). It is not necessary to review the long and uncertain path of the law leading up to *Keith* where the

---

4. If not foreclosed by *Forsyth II*, I would nevertheless conclude that the "special functions" doctrine suggested in *Harlow*, 457 U.S. at 811–12, 102 S.Ct. at 2735, would provide absolute immunity from a civil damage action against the former Attorney General in this case. In addition, the Black Panther Party wiretap would appear to come within the "foreign national security wiretap" exception to the warrant requirement. *See Forsyth I*, 599 F.2d at 1206. *See also United States v. Butenko*, 494 F.2d 593 (3d Cir.), *cert. denied*, 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974).

Supreme Court finally squarely ruled that "prior judicial approval is required for the type of domestic security surveillance involved in this case and that such approval may be made in accordance with such reasonable standards as the Congress may prescribe." 407 U.S. at 324, 92 S.Ct. at 2140.

Although logical argument may be made that the ultimate decision was "foreshadowed" by earlier case law and was not a break with prior law, nothing in *Harlow* suggests that officials must, at peril of being liable for civil damages, correctly foretell the future of Supreme Court and other court decisions in areas of constitutional conduct. The test enunciated in *Harlow* is that of "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 812, 102 S.Ct. at 2735 (citations and footnote omitted).

In the event that there may have been any lingering doubts as to the Supreme Court's holdings in *Harlow*, the Court recently emphasized in *Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the necessity of applying an objective test and that the law must have been clearly established:

> *Harlow v. Fitzgerald, supra,* rejected the inquiry into state of mind in favor of a wholly objective standard. Under *Harlow*, officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ... Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." ... No other "circumstances" are relevant to the issue of qualified immunity.

> ....

We conclude that the District Court correctly held that appellee has demonstrated no violation of his *clearly established* constitutional rights.

*Id.* at 3018, 3019 (emphasis in original). The Court made quite explicit that an official need not be clairvoyant when it noted:

> Yet, under appellee's submission, officials would be liable in indeterminate amount for violation of *any* constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation....

*Id.* at 3019 (emphasis in original).

The decisions of the Supreme Court have consistently held that governmental officials, exercising discretionary functions are entitled to "some form of immunity from suits for civil damages." *Nixon v. Fitzgerald,* 457 U.S. 731, 744, 102 S.Ct. 2690, 2699, 73 L.Ed.2d 349 (1982); *Harlow,* 457 U.S. at 806, 102 S.Ct. at 2732. Qualified immunity for executive officials is the norm. *Harlow,* 457 U.S. at 807, 102 S.Ct. at 2733. Where a defendant establishes that he is an executive official, performing discretionary duties, the plaintiff must "overcome" the qualified immunity. The concluding paragraph of *Davis v. Scherer* states:

> A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct t issue. As appellee has made no such showing, the judgment of the Court of Appeals is reversed....

104 S.Ct. at 3021.

The applicable Supreme Court decisions establish that in order to prevail plaintiffs have the burden of establishing two distinct elements. One, that the law was clearly established at the time the wiretaps were authorized; and two, that the former Attorney General, as a "reasonable person" would have known the law. Plaintiffs suggest that if a reasonable person would know that at some time in the future the law would be clearly established that certain conduct is (and logically always was) unconstitutional, such would be a sufficient showing to allow the case to proceed. As heretofore noted, the Supreme Court has never suggested that a governmental offi-

cial must anticipate the future course of the law.

I think it is unnecessary to review the case law as it existed in 1970 when the Davidon and the Black Panther Party wiretaps were authorized by the Attorney General. In *Keith* the Supreme Court certainly recognized that it had never previously ruled on the question of the requirement for a warrant in domestic security wiretaps. The opening paragraph of *Keith* makes this clear:

> The issue before us is an important one for the people of our country and their Government. It involves the delicate question of the President's power, acting through the Attorney General, to authorize electronic surveillance in internal security matters without prior judicial approval. Successive Presidents for more than one-quarter of a century have authorized such surveillance in varying degrees, without guidance from the Congress or a definitive decision of this Court. *This case brings the issue here for the first time.*

407 U.S. at 299, 92 S.Ct. at 2128 (emphasis added) (footnote omitted).

In short, I completely agree with the analysis of Judge Weis in his dissenting opinion in *Forsyth II.* I likewise am convinced that by any fair objective test, at the time the wiretaps in question were authorized by the Attorney General and throughout the entire time that the wiretaps were in place, the law that domestic national surveillance wiretaps authorized by the Attorney General required warrants was not "clearly established." Indeed, the rule of constitutional law, for which plaintiffs seek damages from the former Attorney General, was not then even "established," let alone "clearly established" by controlling case law.

The requirement that the surveillance be for "national security" must also be addressed. Case law does not clearly define what constitutes a "national security" wiretap. Also, in a case such as this, where the claim of qualified immunity should, if possible, be determined without a trial, *see Har-*

*low,* 457 U.S. at 818, 102 S.Ct. at 2738; *Davis v. Scherer,* 104 S.Ct. at 3020–21, the procedure by which the factual determination that a wiretap is a "national security" wiretap, as opposed to a routine criminal or administrative investigation, has not been outlined by appellate court decision.

The subjective state of mind of the Attorney General in authorizing the wiretap should not be investigated under *Harlow.* If the record discloses a rational national security concern, this should suffice, even though there may have been other possible reasons or motives. *Halperin v. Kissinger,* 578 F.Supp. 231 (D.D.C.1984). Plaintiffs argue that if it appears that there is "any significant purpose other than national security," the *government* should not be allowed to rely on "the national security label." Plaintiffs' Brief at 28. I do not agree, because if such "other purposes" test is utilized, lengthy fact-finding hearings and testimony as to the subjective state of mind of the official authorizing the wiretaps would bring about the precise harms that *Harlow* sought to obviate.

Whatever may be a proper definition of a "national security" wiretap, and its full contours, both the Davidon and Black Panther Party wiretaps certainly qualify as national security wiretaps. In effect, I previously so ruled in this case, *Burkhart,* 448 F.Supp. at 596–98, although I concluded that there remained a factual issue as to whether the surveillances may have had some other purposes. To the extent that my prior opinion suggested that the "sole purpose" of the wiretap had to be for national security, it must be disavowed in light of *Harlow. Harlow* requires a determination of the facts without inquiry into the subjective state of mind of the official.

In addition to the facts set forth in the discussion of the "national security" issue in *Burkhart,* 448 F.Supp. at 596–98, the court of appeals also extensively reviewed the history leading up to the implementation of the Davidon and Black Panther Party wiretaps in *Forsyth I,* 599 F.2d at 1205–06. In *Sinclair v. Kleindienst,* 645 F.2d 1080, 1084 (D.C.Cir.1981), the District of

Columbia Circuit held that the warrantless wiretap on the Black Panther Party was, under the submissions before that Court, "the clearest justification for a national security exception to Title III." Finally, Judge Broderick of this court, in *Forsyth v. Kleindienst*, 551 F.Supp. 1247, 1252 (E.D. Pa.1982), *stay granted*, 700 F.2d 104 (3d Cir.1983), *aff'd in part, dismissed in part, petition for mandamus denied*, 729 F.2d 267 (3d Cir.1984), concluded that the Davidon wiretap was not authorized pursuant to the Attorney General's prosecutorial duties. Judge Broderick noted that there was extensive evidence that showed the wiretap was for national security, including the deposition testimony of John N. Mitchell (taken before the *Harlow* decision) that the " 'focus' " of the wiretap was " '[t]he gathering of information necessary to protect the national security and to get information on foreign intelligence.' " Judge Broderick stated that "[t]he Court has taken defendant Mitchell at his word." *Id.*

I conclude, on the basis of the entire record in this case, that the two wiretaps in question, *i.e.*, the Davidon and Black Panther Party wiretaps, were authorized by the defendant while he was the Attorney General of the United States, for national security purposes. I further conclude that at the time of the authorizations, including the authorized extensions of the wiretaps, the law was not "clearly established" that a warrant was required before implementing the wiretaps. The defendant is therefore entitled to qualified immunity.

In my prior opinion, 448 F.Supp. at 610, I directed that an evidentiary hearing would be held to determine whether the surveillances were conducted in a reasonable manner, compatible with the fourth amendment. Holding an evidentiary hearing for such purpose is doubtful procedure under *Harlow*. Nevertheless, there is probably some "reasonableness" requirement that must be met, to be determined from the objective record.

■ Where lawful wiretaps have been installed for purposes of normal criminal investigation, the law has long been clear that the carrying out of the wiretaps must be "narrowly circumscribed" with "appropriate safeguards" to prevent unnecessary invasions of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Although neither *Katz* nor *Berger* detailed the exact requirements for limiting the scope and duration of wiretaps, Congress, in response, enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, 82 Stat. 212 (1968) (codified at 18 U.S.C. §§ 2510-2520), which included strictures upon authorized wiretaps that they "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter ...." 18 U.S.C. § 2518(5). The inquiry as to whether the agents in carrying out the surveillance acted "reasonably" is to be based on an objective not a subjective standard. "Because of the necessarily ad hoc nature of any determination of reasonableness, there can be no inflexible rule of law which will decide every case." *Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

In *Keith*, the Supreme Court carefully avoided setting the standards of "reasonableness" for domestic national security surveillances. In doing so, the court further made clear, that although a warrant was required, the requirements of Title III might not be the proper tests:

Given these potential distinctions between Title III criminal surveillances and those involving the domestic security, Congress may wish to consider protective standards for the latter which differ from those already prescribed for specific crimes in Title III. Different standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens.

*Keith*, 407 U.S. at 322-23, 92 S.Ct. at 2139-40. The Supreme Court further suggested that Congress might decide that "the time

and reporting requirements need not not be so strict as those in § 2518." *Id.* at 323, 92 S.Ct. at 2140. Considering that *Keith* was decided more than a year after the wiretaps involved in this case were terminated, one can only conclude that as to national security wiretaps, there was no "clearly established" constitutional or statutory standards or guidelines for the Attorney General to follow in authorizing the wiretaps, other than the nebulous concept that they must be "reasonable."

Although plaintiffs have contended that the wiretaps do not properly fit within the somewhat unclear definition of "national security" surveillances, I do not understand plaintiffs to contend that it was unreasonable, per se, for the Attorney General to authorize the wiretaps. Clearly he had probable cause to believe that the wiretaps might provide valuable intelligence information as to the matters under investigation and that the matters being investigated were properly within the Attorney General's sphere of duties. Plaintiffs do contend that the surveillances were not properly limited and minimized.

The Davidon wiretap was originally authorized on November 6, 1970, for one month, and an additional extension of one month was granted. The wiretap was terminated on January 6, 1971. The agents were instructed to record all conversations unless it was known that one of the parties to the conversation was a defendant in a federal criminal case or was an attorney for a criminal defendant. *Forsyth I,* 599 F.2d at 1206. The Black Panther Party wiretaps were in place from June 1, 1970 until February 10, 1971. Although there appears to be little to suggest that the wiretaps were otherwise limited in time or scope, there was no "clearly established" law that national security wiretaps had to be in any way limited.

In the last chapter of *Zweibon v. Mitchell,* 720 F.2d 162 (D.C.Cir.1983) (*Zweibon IV*), summary judgment was entered in favor of John N. Mitchell in regard to wiretaps installed on the telephones of the Jewish Defense League in 1970 and 1971.

The wiretaps had apparently been authorized to be installed without a warrant and against the advice of legal counsel to the Attorney General. The court of appeals in *Zweibon IV* concluded that as of the time of the authorizations "there existed no clearly established warrant or reasonableness requirement." *Zweibon IV,* 720 F.2d at 170. The court noted, however, that the Attorney General had himself imposed some limited "minimization procedures"; *i.e.,* federal criminal defendants and attorneys for criminal defendants were not to be monitored.

In *Sinclair v. Kleindienst,* 645 F.2d 1080, 1082 (D.C.Cir.1981), a case involving Black Panther Party wiretaps at locations different from those involved in the present case, the court stated that "there was no judicially imposed reasonableness requirement for national security wiretaps at the time...."

My final conclusion is that on the basis of the record, and consistent with *Zweibon IV* and *Sinclair v. Kleindienst,* of the District of Columbia Circuit, the former Attorney General of the United States, John N. Mitchell, is entitled to "qualified immunity," as defined in *Harlow* and *Davis v. Scherer,* in that he did not violate any clearly established constitutional or statutory rights of any of the plaintiffs, whose conversations were overheard by government agents who were conducting wiretap telephone surveillances without a warrant, as authorized by John N. Mitchell. Summary judgment will therefore be entered in favor of all defendants, against all the plaintiffs.