Hedrick **SMITH**, et al., **Plaintiffs,**

v.

Richard M. **NIXON**, et al., **Defendants.**

**Civ. A. No. 76–0798.**

United States District Court, District of Columbia.

July 31, 1987.

**602**

Leon Friedman, New York City, John P. Sweeney, Debevoise & Plimpton, Washington, D.C., for plaintiffs.

Larry L. Gregg, Senior Trial Counsel, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., Sharon Cohen, Trial Atty., for defendants.

### MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

#### Introduction

The single question before the Court is whether the plaintiffs may obtain equitable relief on their request for expungement of all previously nonpublicized transcripts or summaries of an 89–day government wiretap on their home telephone in 1969. The wiretap had purportedly been conducted pursuant to a presidentially approved surveillance program instituted for the purpose of identifying government employees who had been leaking sensitive classified national security information to the press. The circumstances surrounding the wiretap are fully detailed in the earlier opinions in this case and need not be reiterated here. *See generally Smith v. Nixon*, 449 F.Supp. 324 (D.D.C.1978), *rev'd*, 606 F.2d 1183 (D.C. Cir.1979), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981); motion to dismiss granted, 582 F.Supp. 709 (D.D.C.

1984) and 582 F.Supp. 716 (D.D.C.1984), *aff'd in part and rev'd in part*, 807 F.2d 197 (D.C.Cir.1986). It suffices to say for the purposes of this opinion that the wiretaps were conducted illegally. *See Smith v. Nixon*, 807 F.2d 197, 204 (D.C.Cir.1986) ("Smith II") (stating: "There is no dispute that the challenged wiretap was illegal (albeit not in violation of clearly established law).") (*citing, United States v. United States District Court*, 407 U.S. 297, 321, 92 S.Ct. 2125, 2138, 2139, 32 L.Ed.2d 752 (1979)) (ruling that Fourth Amendment requires prior judicial approval for national security surveillance operations). *See also Halperin v. Kissinger*, 807 F.2d 180, 185 (D.C.Cir.1986) ("Halperin II").

After a careful review of the authorities and arguments submitted by the parties, the Court has concluded that expungement of the surveillance transcripts is appropriate relief in light of the illegal nature of the wiretap and the resulting harm to the plaintiffs.

#### Discussion

Plaintiffs originally sued several former and current federal officials for damages and equitable relief alleging that the government wiretap of their home telephone violated their First, Fourth, and Ninth Amendment rights and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* The damages claim was decided adversely against the plaintiffs in part because the defendants' conduct in instituting a warrantless wiretap was not in violation of "clearly established" law. *Smith v. Nixon*, 582 F.Supp. 709 at 715. As such, the Court concluded that the defendants were shielded from liability under the qualified immunity doctrine. *Id.*

It was not until three years after the wiretaps were conducted against plaintiffs that the Supreme Court laid down its first definitive ruling on the applicability of the warrant clause of the Fourth Amendment to national security wire surveillance operations. *See United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (Keith); *Sinclair v.*

*Kleindienst,* 645 F.2d 1080, 1084–1085 (D.C.Cir.1981); *see also Halperin II, supra,* 807 F.2d 180 at 185. Consequently, because of the uncertain nature of the law at the time the wiretap was conducted, the defendants were protected from liability for any constitutional violations pursuant to the standards announced by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982) as follows:

> [g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*See Smith v. Nixon, supra,* 582 F.Supp. 709, 715 (D.D.C.1984); *Sinclair, supra; accord Zweibon v. Mitchell,* 720 F.2d 162, 173 (D.C.Cir.1983) ("Zweibon IV"). *See also Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

■ While there is now little serious question that public officials have qualified immunity against civil actions founded on principles that had not yet been announced at the time the challenged official conduct took place, *see Harlow, Sinclair, supra,* there remains the question of what other relief is available to an aggrieved party under those later announced principles. On this point, the Court agrees with the plaintiffs' assertion that while the qualified immunity of a public official acts as a bar to a suit for damages, it does not constitute a defense to a request for equitable relief such as that sought here. *See National Treasury Employees v. Nixon,* 492 F.2d 587, 609 (D.C.Cir.1974):

> A good faith defense in a suit for damages brought against any federal official as an individual is seemingly established by *Bivens v. Six Unknown Agents ...* but that defense is not assertable in the face of a quest limited to injunctive, declarative or mandamus relief."

*Accord Briggs v. Goodwin,* 569 F.2d 10, 15 n. 4 (D.C.Cir.1977).

Defendants do not seriously contest this proposition; rather, they argue that because the Supreme Court did not clarify the warrant requirements for wire surveillances until three years after the wiretap in this case was conducted, the wiretap was *a fortiori* constitutional. *See* Reply to Plaintiffs' Opposition at pp. 3–4 (*citing, Smith II,* 807 F.2d 197 (D.C.Cir.1986)). In reaching this conclusion, defendants apparently rely on the Court of Appeals' observation that, "There is no dispute that the challenged wiretap was illegal (*albeit not in violation of clearly established law* ). *Id.* at 204 (emphasis added). However, when speaking of the fact that the wiretap was not in violation of "clearly established" law, it is abundantly clear that the Court of Appeals was referring solely to the standard for establishing qualified immunity of the officials who authorized the wiretap, not to the lawfulness of the wiretap *per se.* The Court emphasizes in no uncertain terms that the wiretap itself *"was illegal." Id.* (emphasis added) (*citing Keith, supra* ).

Just as the warrantless wiretap in *Keith* was determined to have been in violation of the Fourth Amendment in that case as a matter of first impression, so was the warrantless wiretap in this case equally unlawful. 407 U.S. 297, 321, 92 S.Ct. 2125, 2138–2139, 32 L.Ed.2d 752 (1972). This is so notwithstanding the fact that the defendants are personally immune from suit.

As a consequence of the illegal nature of the wiretap, the government's rights in retaining the surveillance records for the purposes of fulfilling any statutory records preservation and disposal obligations become extremely precarious. *See Smith II,* 807 F.2d 197 at 204. Statutory provisions directing the disposal of government documents "must yield to statutory or constitutional rights elsewhere granted." *Id.* (*citing Hobson v. Wilson,* 737 F.2d 1, 64 (D.C.Cir.1984)). "Expungement of Government records" may be ordered in an appropriate case in order to "vindicate rights secured by the Constitution or by statute." *Doe v. U.S. Air Force,* 812 F.2d 738, 741 (D.C.Cir.1987) (*citing Chastain v. Kelley,* 510 F.2d 1232, 1235 (D.C.Cir.1975)).

Having concluded that the wiretap in the instant case was illegal, the Court must "balance the harm caused to [the plaintiffs] by the existence of any [wiretap] records" against "the utility to the Government of their maintenance." *Hobson, supra,* 737 F.2d at 65 (*quoting Paton v. La Prade,* 524 F.2d 862, 868 (3d Cir.1975)) (*citing Chastain, supra,* 510 F.2d 1232, 1236–1237 (D.C.Cir.1975)) (District Court should consider "extent to which the information in the Bureau's files violates appellee's rights without serving any legitimate needs of the Bureau.") Furthermore, in instances involving a threat of future detrimental consequences arising from retention of records, the district court should "find that there is a real and immediate threat of irreparable harm." *Reuber v. United States,* 750 F.2d 1039, 1068 (D.C.Cir.1984) (Bork, J., concurring).

In their opposition to the plaintiffs' request for expungement, the defendants have supplied the Court with an affidavit from the Records Appraisal Director of the National Archives which essentially states that the records should be retained because, "The wire-tapping of Mr. Smith and certain other individuals, initiated in 1969 at the request of the Nixon Administration is *per se* a topic of great historical interest ..." *See* Affidavit of Jean E. Keeting, Exhibit A, Reply to Plaintiffs' Opposition. The defendants contend that the Court's previous Order restricting access or disclosure of the records to anyone but the FBI or the National Archives strikes the proper balance between the privacy interests of the plaintiffs and the government's need to preserve a "set of records with potentially great historical significance." *See* Mem. in Support of Motion at 7–8.

The plaintiffs, Hedrick and Ann Smith, have in turn filed affidavits of their own detailing the harm which has been caused and will continue to be incurred by them as a consequence of the government's retention and use of the records. In particular, Ann Smith states that she was "horrified" when she read the transcripts of the wiretaps which reveal "intimate family conversations with [her] children, [her] husband,

and [her] mother".... *See* Affidavit of Ann Smith. She further states:

It is offensive and distressing to me to think that members of the National Archives or future historians will be able to read exactly what I and members of my family said to each other at this crucial period in our lives. The thought that strangers—both archives and historians—will be able to read our intimate conversations purely out of curiosity is extremely disturbing to me. I feel that I will be offended and my personal feelings violated each time a new person reads these transcripts. *Id.*

Hedrick Smith similarly describes the sense of violation and trauma he will continue to feel as a consequence of the surveillance and adds, "The impersonal indignations, such as "child Smith (FNU) discusses with adult subject (LNU) ... treat me and my family as if they were members of a criminal conspiracy." *See* Affidavit of Hedrick Smith. He also relates that it is his belief that the existence of the wiretap logs in government files will have a continuing detrimental effect on his employment prospects. *Id.*

As for the contents of the 107 pages of wiretap logs themselves, a total of 138 telephone conversations are reported. The logs contain reports of 76 conversations among family members and friends concerning personal matters, 17 conversations between Hedrick Smith and colleagues at *The New York Times,* 31 other conversations between Hedrick Smith and third parties not in the government and two entries of conversations between Smith and a government employee.

Of the 138 conversations, four summary reports were prepared and transmitted in letter form to Henry Kissinger and the President's Office. These letters summarized conversations between Hedrick Smith and Averell Harriman, and two conversations between Smith and a government official and a foreign ambassador. The summary letters have previously been submitted as part of the public record in this case and plaintiffs raise no issue as to their expungement. No summaries were pre-

pared of the remaining personal or private family conversations that made up the bulk of the logs.

#### Conclusion

 In view of the foregoing, the Court finds that the prejudicial effects resulting to the plaintiffs by the government's retention of the wiretap logs far exceed the government's interest in their maintenance. *See Chastain, Hobson, Reuber, Doe, supra.* Likewise, the harm resulting to the government by expungement of the wiretap logs is appreciably diminished by its freedom to retain any wiretap summaries which had been prepared for Henry Kissinger and the President's Office and which have previously been submitted as part of the public record.

In conclusion, the Court finds that in consideration of the illegal nature of the wiretap, the minimal interest the government has demonstrated in the retention of the wiretap logs and the substantial nature of the harm demonstrated by the plaintiffs in their maintenance, and all parties having agreed that summary judgment would be an appropriate disposition of this matter, the equitable relief sought by plaintiffs in expunging the 107 pages of transcribed written logs of the June 4, 1969 through August 31, 1969 wiretap should be granted. An appropriate order will be entered accordingly.

#### ORDER

Upon consideration of the officially sued defendants' Renewed Motion for Judgment on the Pleadings with Respect to the Plaintiffs' Equitable Claims, plaintiffs' response thereto, oral argument, and the entire record, it is by the Court this 31st day of July, 1987

ORDERED, that the original 107 pages of transcribed logs of the June 4, 1969 through August 31, 1969 wiretap shall be delivered to the plaintiffs. All copies of said wiretap logs other than those portions which have previously been made part of the public record in this case, shall be ex-

punged from any government files wherein they are presently located.